IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SH TOBACCO & CIGARS, LLC,           §
                                    §
        Plaintiff-Counterdefendant, §
                                    §        Civil Action No. 3:23-CV-0781-D
VS.                                 §
                                    §
MASTERS 96TH LLC,                   §
                                    §
        Defendant-Counterplaintiff- §
        Third-Party Plaintiff,      §
                                    §
VS.                                 §
                                    §
SULAIMAN A. ALHAJRI,                §
                                    §
        Third-Party Defendant.      §

MEMORANDUM OPINION
AND ORDER

In this diversity action arising from the alleged breach of a commercial lease agreement, defendant-counterplaintiff-third-party plaintiff Masters 96th LLC ("Masters") moves for partial summary judgment and plaintiff-counterdefendant SH Tobacco & Cigars, LLC ("SH Tobacco") and third-party defendant Sulaiman A. Alhajri ("Alhajri") move for summary judgment. For the reasons that follow, the court grants Masters' motion for partial summary judgment; grants SH Tobacco's motion for summary judgment on Masters' declaratory judgment counterclaim but otherwise denies the motion for summary judgment filed by SH Tobacco and Alhajri; raises *sua sponte* that Masters is entitled to summary judgment to the extent that SH Tobacco intends to plead a claim under the Texas Property Code; and grants SH Tobacco leave to file an opposition response to granting summary

judgment on that claim.

I

In March 2022 SH Tobacco (as tenant) and Masters (as landlord) entered into a commercial lease ("Lease") for retail space ("Premises") located in a Greenville, Texas shopping center.[1]  Alhajri, a member of SH Tobacco, guarantied the Lease.

Under the Lease, SH Tobacco was permitted to use the Premises "solely for a tobacco, cigar, and vape store," and "for no other purpose unless approved in writing by [Masters]." D. App. (ECF No. 30) at 2-3.  Under section 3 of the Lease ("Section 3"), SH Tobacco was prohibited from using the Premises

> for a head shop or other establishment selling or exhibiting drug paraphernalia, supplies, products, or other equipment including, but not limited to, rolling papers, roach clips, bongs, pipes, hookahs, needles and small spoons, straws or paper tubes, small mirrors, or razorblades (collectively, the "Prohibited Products.").

*Id*. at 2.  In addition, Section 3 provides that

> [t]he sale of any Prohibited Products in the Premises . . . shall constitute an immediate default hereunder and [Masters] may, without notice and in addition to any other remedies at law or in equity, terminate the Lease, regain possession of the Premises, and immediately accelerate all rent due hereunder.

---

[1]When more than one side in a case move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e. g.*, *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

*Id.* at 2-3.

SH Tobacco opened for business in June 2022, doing business as Tobacco Tree Cigars Vape & More.  A few months after the business opened, Masters discovered that SH Tobacco was advertising cannabidiol ("CBD") and kratom for sale.  Masters believed that this constituted a default under the Lease.  In a September 2022 letter ("Default Notice"), Masters advised SH Tobacco, *inter alia*, that it had "observed that [SH Tobacco] is selling CBD and a substance known as 'kratom' at the Premises"; that the sale of these products is in direct violation of the Lease; that CBD and kratom are not "tobacco or vape products"; and that

> [r]ather than evicting [SH Tobacco] from the Premises and recovering all available damages, as [Masters] is entitled to do under Section 3 [of the Lease] given this Event of Default, [Masters] demands that [SH Tobacco] immediately cease and desist the marketing and sale of CBD, kratom, and any other Prohibited Products at the Premises.  [SH Tobacco] is hereby notified that any future marketing or sale of CBD, kratom, or any other Prohibited Products at the Premises will result in [SH Tobacco]'s prompt eviction.

P. App. (ECF No. 33) at 28-29.

In November 2022 Masters learned that SH Tobacco was advertising and offering various Prohibited Products for sale on the Premises, including pipes, bongs, hookahs, CBD, and kratom.  Masters believed that this conduct violated the Lease and that SH Tobacco's continued violations of the Lease constituted a default entitling Masters, under the terms of the Lease, to repossess the Premises and take possession of the personal property inside.

In January 2023 Masters arranged for the locks on the Premises to be changed and retook possession of the Premises.  Masters then allegedly super-glued and broke a key in

the door to the Premises and placed a concrete barrier in front of the entryway.  Masters also removed SH Tobacco's property from the Premises and allegedly placed it in climate-controlled storage, where it remains.

In March 2023 SH Tobacco sued Masters in state court alleging a single claim under Texas law for "Termination of the Lease Agreement" and seeking damages under Tex. Prop. Code Ann. § 93.002(g) (West 2023).  Masters removed the case to this court and filed counterclaims against SH Tobacco for breach of contract and declaratory judgment and a third-party claim against Alhajri for declaratory judgment.

SH Tobacco and Alhajri now move for summary judgment on Masters' claims against them; Masters moves for summary judgment on SH Tobacco's claim against it; and Masters cross-moves for summary judgment on its breach of contract counterclaim and requests for declaratory relief.  The court is deciding the motions on the briefs, without oral argument.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once it does so, the nonmovant must go beyond its pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When the summary judgment movant will have the burden of proof on a claim or defense, however, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court begins with Masters' motion for summary judgment on SH Tobacco's claim against it, which Masters construes as a claim for breach of contract.

A

Masters moves for summary judgment on the ground, *inter alia*, that SH Tobacco

- 5 -

cannot establish the third element[2] of its breach of contract claim, i.e., that Masters breached the Lease when it locked SH Tobacco out of the Premises in January 2023. In support, Masters contends that the Lease explicitly permitted it to lock SH Tobacco out of the Premises and to possess and remove store property in the event of a tenant default; that SH Tobacco defaulted on the Lease in September 2022 by advertising for sale CBD and kratom (products implicitly prohibited under the Lease); that SH Tobacco defaulted on the Lease again in November 2022 by offering for sale bongs, pipes, and hookas (products expressly prohibited by the Lease); that SH Tobacco also defaulted on the Lease in January 2023 by offering for sale various products that constituted prohibited drug paraphernalia; that the Texas Property Code does not apply in this case because the terms of the Lease control; and that "[t]he summary judgment evidence conclusively establishes that because Plaintiff defaulted on Section 3 of the Lease in November of 2022, Masters' January 2023 lockout cannot constitute a breach of the Lease, rather it was a lawful exercise of one of its contractually-provided remedies," D. Br. (ECF No. 31) at 11.

SH Tobacco responds that selling CBD and kratom—which the Default Notice and pleadings identify as the alleged default warranting the lockout—does not constitute a default under the Lease because the Lease does not list CBD or kratom as Prohibited Products; CBD,

---

[2]"A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant['s] breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citations omitted), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017).

kratom, and kava are legal for sale, exhibition, and advertising in Texas; the Lease permits the Premises to be used for a "tobacco, cigar, and vape store"; and the evidence establishes[3] that CBD, kratom, and kava products are often found in tobacco, cigar, and vape stores in the surrounding area.  SH Tobacco contends that "[i]n light of these circumstances, Plaintiff has followed all covenants under the Lease so as to warrant possession of the Premises for the entire five-year term," as provided in section 30 of the Lease ("Section 30"),[4] and that by "failing to deliver the premises to Plaintiff in the absence of any default, Defendant has breached the Lease."  P. Br. (ECF No. 39) at 14-15.

B

SH Tobacco's summary judgment response focuses primarily on whether the advertising and sale of CBD and kratom constituted an event of default that would "justify[] the lockout."[5]  P. Br. (ECF No. 39) at 11.  But SH Tobacco does not dispute that, aside from advertising and selling CBD and kratom, it *also* advertised and sold bongs, pipes, hookahs,

---

[3]In support of this assertion, SH Tobacco relies on the affidavit of Daniel Rutledge ("Rutledge").  Masters objects to this evidence in its summary judgment reply and moves to strike it.  Because the court has not relied on Rutledge's affidavit in deciding Masters' motion, it denies the evidentiary objection and motion to strike as moot.

[4]Section 30 of the Lease states: "if Tenant shall promptly pay the Rent and perform all of the covenants and agreements stipulated to be performed on Tenant's part, Tenant shall have possession of said Premises during the Term."  D. App. (ECF No. 30) at 11.

[5]SH Tobacco appears to concede that the Lease permits Masters to lock it out "in the event of a default."  P. Br. (ECF No. 39) at 11 ("[T]he Lease provisions relied on by Defendant in justifying the lockout state the landlord's remedies in the event of a default by Plaintiff. . . . Without an event of default by Plaintiff, Defendant is not entitled to lock Plaintiff out pursuant to the Lease.").

- 7 -

and other drug paraphernalia, i.e., "Prohibited Products," in its store.

Section 3 of the Lease provides that

> [t]he sale of any Prohibited Products in the Premises . . . shall constitute an immediate default hereunder and Landlord may, without notice and in addition to any other remedies at law or in equity, terminate the Lease, regain possession of the Premises, and immediately accelerate all rent due hereunder.

D. App. (ECF No. 30) at 2-3.  Under the terms of the Lease, SH Tobacco's undisputed sale of Prohibited Products constituted an "immediate default" that gave Masters the right to regain possession of the Premises.  In light of this undisputed evidence, SH Tobacco cannot create a genuine issue of material fact on the question whether Masters breached Section 30[6] of the Lease.[7]

C

SH Tobacco maintains that the lockout violated Tex. Prop. Code Ann. § 93.002(c), which provides:

> A landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from:
> (1) bona fide repairs, construction, or an emergency;
> (2) removing the contents of premises abandoned by a tenant; or
> (3) changing the door locks of a tenant who is delinquent in

---

[6]SH Tobacco argues only that Masters "violated Section 30 of the Lease."  P. Br. (ECF No. 39) at 13.  It does not contend that Masters' conduct constituted a breach of any other provision of the Lease.

[7]Because the court concludes that SH Tobacco has failed to create a genuine issue of material fact on the question of breach, it need not address Masters' argument that SH Tobacco has failed to present evidence of its damages.

paying at least part of the rent.

*id.*; *see also* Pet. (ECF No. 1) at ¶ 14 (alleging "that Defendant's unlawful lockout was not premised upon any of the factors set forth in Section 93.002(c) of the Texas Property Code" and "is wholly improper and unlawful under Texas law."). To the extent that SH Tobacco intends to assert an independent claim for a violation of § 93.002(c), the court raises *sua sponte*[8] that Masters is entitled to summary judgment on this claim.

Commercial lockout is governed by §§ 93.002 and 93.003 of the Texas Property Code, which forbid a landlord from "prevent[ing] a tenant from entering the leased premises except by judicial process," unless certain delineated circumstances exist. Tex. Prop. Code Ann. § 93.002(c). Section 93.002(g) creates a cause of action if a landlord violates the statute, allowing recovery of actual damages, one month's rent, or $500, whichever is greater. Under § 93.002(h), however, parties to a lease agreement are free to establish other lockout procedures by contract. *See id.* § 93.002(h) ("A lease supersedes this section to the extent of any conflict."). Masters and SH Tobacco chose the contractual option in this case.

─────────────

[8]Although Masters contends in its summary judgment motion that, because the Lease grants repossession rights that differ from the procedures outlined in Tex. Prop. Code Ann. § 93.002(c), the Lease controls under § 93.002(h), Masters did not expressly move for summary judgment on SH Tobacco's claim brought under Tex. Prop. Code Ann. § 92.002(g). "It is error to grant summary judgment on a ground not raised." *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987)). But the court can raise a basis for granting summary judgment *sua sponte*, provided it affords the nonmovant (here SH Tobacco) notice and a fair opportunity to respond. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

As set out above, if SH Tobacco sells Prohibited Products, Section 3 of Lease authorizes Masters, "without notice and in addition to any other remedies at law or in equity," to "terminate the Lease, regain possession of the Premises, and immediately accelerate all rent due hereunder." D. App. (ECF No. 30) at 2-3.

SH Tobacco maintains that the Lease only provides Masters with landlord remedies in the event of a breach or default by SH Tobacco. It contends that, in this case, "[n]o such default has occurred"; that "[w]ithout an event of default . . . [Masters] is not entitled to lock [SH Tobacco] out pursuant to the Lease"; and that "[t]herefore, the Texas Property Code governs." P. Br. (ECF No. 39) at 11. The court disagrees. Based on the undisputed fact that SH Tobacco sold Prohibited Products in violation of the Lease, the court has already held that SH Tobacco's conduct constituted an "immediate default" that triggered Masters' contractual right under the terms of the Lease to regain possession of the Premises. To the extent that the Property Code conflicts with Section 3 of the Lease—i.e., by forbidding a landlord from preventing a tenant from entering the lease premises except by judicial process—the Lease supersedes. *See* § 93.002(h).

Accordingly, the court grants Masters' motion for summary judgment on SH Tobacco's breach of contract claim and raises *sua sponte* that Masters is also entitled to summary judgment to the extent that SH Tobacco intends to assert an independent claim under § 93.002(g) of the Texas Property Code.

- 10 -

IV

The court turns next to SH Tobacco's summary judgment motion addressed to Masters' breach of contract counterclaim, which is based on the allegation that "SH Tobacco's sale, exhibition, and advertising of CBD, Kava, and/or Kratom is a breach of the lease."  Countercl. (ECF No. 14) at ¶ 19.

A

SH Tobacco moves for summary judgment on this counterclaim primarily on the ground that SH Tobacco did not breach the Lease by selling, exhibiting, and advertising CBD, kava, and/or kratom.  In support, it contends that the "clear and unrebutted" evidence establishes that it is typical for a tobacco, cigar, and vape store in Greenville, Texas to sell, exhibit, and market for sale CBD, kratom, and kava products, P. Br. (ECF No. 34) at 10; that CBD, kratom, and kava are not listed as Prohibited Products in the Lease and are, in fact, lawful for sale within Texas; and that there is no evidence that products containing CBD, kratom, or kava are products sold by SH Tobacco as drug paraphernalia, supplies, products, or equipment under Texas law.

Masters responds that SH Tobacco is "cherry pick[ing]" from Masters' counterclaim and that the undisputed evidence conclusively shows that SH Tobacco's conduct violated the use restrictions of Section 3 of the Lease.  D. Br. (ECF No. 42) at 23.  Masters maintains that, viewed as a whole,

- 11 -

> Masters' Counterclaim sufficiently alleges throughout that
> Masters is seeking to hold Plaintiff liable for breaching the use
> restrictions in the Lease prohibiting it from acting as a "head
> shop" and engaging in the other prohibitions detailed in Section
> 3 of the Lease that characterize the types of items sold in head
> shops.

*Id.* at 25. Masters posits that the summary judgment evidence, including SH Tobacco's own admission, establishes that SH Tobacco breached Section 3 of the Lease by selling bongs, hookahs, and pipes, which are expressly listed as Prohibited Products; that SH Tobacco also breached the Lease by advertising and selling CBD and kratom despite having been put on notice that Masters believed these products fell into the category of "prohibited products" sold in "head shops or other establishments"; and that SH Tobacco breached the Lease when it failed to observe the restrictive use covenants in Section 3 of the Lease and then failed to cure such deficiencies within 10 days after receiving written notice of these deficiencies.

B

Preliminarily, the court holds that evidence that SH Tobacco sold bongs, hookahs, and pipes cannot, without more, create a genuine issue of material fact on Masters' breach of contract counterclaim because Masters has not pleaded a counterclaim based SH Tobacco's sale of these products. As a general rule, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This rule is rooted in the need to provide adequate notice. "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"

- 12 -

*Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).  "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."  *Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767, 781 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012)).

In its counterclaim, Masters alleges that "SH Tobacco's sale, exhibition, and advertising of CBD, Kava, and/or Kratom is a breach of the lease."  Countercl. (ECF No. 14) at ¶ 19; *see id.* ¶ 11 ("So when it established a head shop selling and exhibiting cannabis (CBD) and CBD's sibling counterculture products Kava and/or Kratom, SH Tobacco violated the lease several ways." (footnotes omitted)).  Masters does *not* plead that SH Tobacco breached the lease by selling bongs, hookahs, and pipes.  Nor does it allege or otherwise put SH Tobacco on notice that, in addition to breaching the Lease by selling and advertising CBD, kava, and kratom, SH Tobacco *also* breached the lease by selling bongs, hookahs, and pipes.

Accordingly, because Masters has not pleaded a breach of contract counterclaim based on SH Tobacco's sale of bongs, hookahs, and pipes, evidence of this conduct is insufficient to create a genuine issue of material fact on the question whether SH Tobacco breached the Lease by selling, exhibiting, or advertising CBD, kava, or kratom.

C

The court next considers whether Masters has created a genuine issue of material fact as to the contract counterclaim that it *has* alleged: i.e., for breach of the Lease based on SH Tobacco's selling, exhibiting, and advertising CBD, kava, and kratom. The court concludes that it has.

As stated above, Section 3 of the Lease provides:

> Tenant shall use the Premises solely for a tobacco, cigar, and vape store. In no event shall Tenant use the Premises for a head shop or other establishment selling or exhibiting drug paraphernalia, supplies, products, or other equipment including, but not limited to, rolling papers, roach clips, bongs, pipes, hookahs, needles and small spoons, straws or paper tubes, small mirrors, or razorblades (collectively, the "Prohibited Products").

D. App. (ECF No. 30) at 2. In support of its summary judgment response, Masters has adduced undisputed evidence that SH Tobacco advertised and sold CBD and kratom at its store. In the Default Notice, Masters informed SH Tobacco that "[n]either CBD nor kratom are 'tobacco or vape products,'" and that "kratom is an illicit drug," P. App. (ECF No. 33) at 28. Masters has also provided evidence that the parties understood that the Lease prohibited SH Tobacco from selling "ANY drug paraphernalia," and that SH Tobacco acknowledged this restriction, promising to sell "only tobacco leaf with vapes and cigarettes and some Accessories phones." D. App. (ECF No. 43) at 47. Masters contends that, by selling and exhibiting CBD and kratom, SH Tobacco "established a head shop,"[9] in violation

---

[9]According to Masters, a "head shop" is "a retail outlet specializing in paraphernalia used for consumption of cannabis and tobacco and items related to cannabis culture and

of the Lease.

Without suggesting any view on whether Masters will prevail on its breach of contract counterclaim at trial, the court holds that Masters' evidence[10] is sufficient to create a genuine issue of material fact on the question whether SH Tobacco breached Section 3 of the Lease by advertising and selling CBD and Kratom at the Premises.

### D

In its summary judgment response, Masters contends that the evidence "conclusively establishes that Plaintiff breached the use restrictions in Section 3 of the lease by selling bongs, pipes, and hookahs, along with advertising and selling CBD and Kratom."  D. Br. (ECF No. 42) at 28.  Masters asks the court, in light of this "conclusive evidence in support of the breach element of its contract claim, about which there is no genuine dispute of material fact," not only to deny SH Tobacco's motion for summary judgment but also to grant summary judgment in favor of Masters.  *Id.*

Assuming *arguendo* that the court in its discretion would permit Masters to move for what is essentially a second motion for summary judgment in this case,[11] the court denies the

related countercultures."  Countercl. (ECF No. 14) at 2 n.1.

[10]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[11]N.D. Tex. Civ. R. 56.2(b) limits the number of summary judgment motions that can be filed without leave of court.  *See id.* ("Unless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment.").

motion.  Although Masters has created genuine issues of material fact that are sufficient to preclude SH Tobacco from obtaining summary judgment dismissing Masters' breach of contract counterclaim, Masters has not established under the heavy beyond peradventure standard that it is entitled to recover on this counterclaim.

E

SH Tobacco also moves for summary judgment on Masters' breach of contract counterclaim on the following grounds: Masters has no evidence to support its damage model; the evidence clearly demonstrates unclean hands by Masters; and by failing to take steps to replace SH Tobacco with a new tenant, Masters failed to mitigate its damages.

Regarding the affirmative defense of unclean hands, Masters correctly argues that, under Texas law, this equitable doctrine does not apply to legal claims for breach of contract. *Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*, 2010 WL 11531433, at *7 (E.D. Tex. June 15, 2010) ("Texas law does not provide for the defense of unclean hands in suits not seeking equitable relief or invoking the equity jurisdiction of the court."); *Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*, 2020 WL 1443561, at *6 (Tex. App. Mar. 25, 2020, pet. denied) ("For 'an action at law for damages for breach of contract,' the equitable defense of unclean hands is not applicable." (citations omitted)); *In re Nolle*, 265 S.W.3d 487, 494 (Tex. App. 2008, no pet.) ("'Unclean hands' is an affirmative defense available when the plaintiff is seeking an equitable remedy."); *Furr v. Hall*, 553 S.W.2d 666, 672 (Tex. App. 1977, writ ref'd n.r.e.) ("[T]he 'clean hands' maxim is strictly an equitable doctrine not applicable outside equitable proceedings.").  Accordingly, SH Tobacco is not entitled to

summary judgment based on the affirmative defense of unclean hands.

Nor is SH Tobacco entitled to summary judgment on the affirmative defense of mitigation of damages.

First, SH Tobacco has failed to demonstrate that Masters was required to mitigate any damages with respect to unpaid rent, given that the Lease expressly permits Masters to "immediately accelerate all rent due hereunder." D. App. (ECF No. 30) at 3.

Second, SH Tobacco has not established beyond peradventure that Masters failed to take reasonable steps to mitigate its damages. This is because Masters has produced evidence that it immediately began contacting replacement tenants as soon as it knew the lockout would occur, and that, since the lockout, it has continued its efforts to locate a replacement tenant for the Premises, but has not yet been able to find a satisfactory replacement. This evidence at the very least creates a genuine issue of material fact with respect to mitigation of damages, thus precluding SH Tobacco from obtaining summary judgment on this affirmative defense.

Third, to the extent that SH Tobacco maintains that "Masters has no evidence to support its damage model," P. Br. (ECF No. 34) at 12, the court disagrees. Masters has adduced evidence that it accelerated all rent due under the Lease and incurred additional damages and expenses related to the lockout, seeking a total of $199,294.69 (an amount that does not include legal fees). Masters' evidence is sufficient to create a genuine issue of material fact regarding Masters' damage model.

- 17 -

F

Accordingly, neither SH Tobacco nor Masters is entitled to summary judgment with respect to Masters' breach of contract counterclaim.

V

In addition to its breach of contract counterclaim, Masters alleges two counterclaims under the Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2020).  In the first ("Count II"), it seeks a declaration that it is entitled to exercise its remedies under the Lease.  In the second ("Count III"), it seeks a declaration that Alhajri, SH Tobacco's guarantor, is jointly and severally liable for any damages, fees, and costs Masters incurred arising from SH Tobacco's breach.

A

SH Tobacco moves for summary judgment on Masters' declaratory judgment counterclaims on the grounds that the declaratory relief Masters seeks is already under consideration by this court through Masters' breach of contract counterclaim, and that the declarations Masters seeks "do not concern a 'ripe, justiciable controversy' required to support a declaratory judgment claim."  P. Br. (ECF No. 34) at 17.

Masters responds, *inter alia*, that it is permitted under federal law to bring parallel claims that involve both declaratory relief and another cause of action and that

> [w]hile [its] two claims for declaratory relief may rely on the question of whether Plaintiff breached the Lease and run somewhat parallel to this claim, the relief for each of these claims is separate from that sought under [Masters'] breach of contract claim.  Specifically, the first claim seeks to resolve any

> dispute over whether Masters' conduct was proper in exercising
> its remedies under the Lease.  And the second claim seeks relief
> on an entirely different issue[]: whether Alhajri is liable under
> his Guaranty for Plaintiff's breach of the Lease.

D. Br. (ECF No. 42) at 34.

B

The federal Declaratory Judgment Act[12] provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Federal courts have broad discretion to grant or refuse declaratory judgment.  *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so.  *See Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam).  Although "the district court's

---

[12]The Texas Declaratory Judgments Act does not apply in this court. *See, e.g.*, *Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.) ("When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." (citing *i2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002) (Fish, C.J.))).  Masters' claims are necessarily brought under the federal Declaratory Judgment Act.

- 19 -

discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).  The court cannot dismiss a declaratory judgment action "on the basis of whim or personal disinclination."  *Id.* (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)).

## C

In Count II, Masters seeks a declaration "that it is entitled to exercise its lease remedies," which include:

- repossession of the commercial retail space,
- immediate payment of all past, present, and future unpaid rent,
- indemnification and reimbursement for costs of the cleaning and restoring the space for a new tenant,
- dispose, remove and store (at SH Tobacco's expense plus twenty percent), or sell the tenant's personal property,
- indemnification and reimbursement of any and all broker/brokerage costs and fees associated with locating a tenant to replace SH Tobacco,
- indemnification and reimbursement of the costs it incurred exercising its lease remedies, and
- indemnification and reimbursement of the attorneys' fees and costs it incurred exercising its lease remedies including this lawsuit, and
- any other lease remedy.

Countercl. (ECF No. 14) at ¶ 22 (citing Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004).  This list seeks substantially the same relief as Masters requests for its breach of contract counterclaim ("Count I"):

Masters seeks approximately $172,117.44 in damages.  It was damaged by SH Tobacco's breach of the lease in the form of the costs it incurred repossessing the space; past, present, and future unpaid rent; the costs it incurred cleaning and restoring the

> space for a new tenant; costs it incurred disposing, removing and storing, or selling tenant's personal property; the broker/brokerage fees and costs it incurred locat[ing] a tenant to replace SH Tobacco; the costs and fees it incurred exercising its lease remedies; and the legal fees and costs it incurred exercising the remedies above and to prosecute this suit

*Id.* ¶ 20.

Masters is correct that the question presented in Count I (i.e., whether SH Tobacco breached the lease) is different from whether "Masters' conduct was proper in exercising its remedies under the Lease."  D. Br. (ECF No. 42) at 34.  But Masters does not request a declaration that its conduct "was proper."  *Id.*  In fact, Masters' request for a declaratory judgment is not concerned with the propriety of any past conduct.  Masters instead requests a declaration that it is entitled under the Lease to recover the very same damages that it seeks in connection with Count I.  Accordingly, the court, in its discretion, declines to adjudicate Count II because it is duplicative of Masters' breach of contract counterclaim.  *See, e.g.*, *Metcalf v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2399369, at *9 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (noting that declaratory judgment action should be dismissed because it duplicated plaintiffs' quiet title claim); *Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (denying as redundant a declaratory judgment claim seeking contract interpretation where this would be resolved as part of breach of contract action).  The court therefore grants SH Tobacco's motion for summary judgment with respect to Masters' declaratory judgment claim asserted in Count II.

In Count III, Masters seeks a declaration that Alhajri "is jointly and severally liable for any and all damages, fees, and costs incurred by [Masters] arising from SH Tobacco's breach of the lease and Masters' exercise of lease remedies according to Alhajri's guaranty of the lease."  Countercl. (ECF No. 14) at ¶ 24.  Unlike Count II, the question whether Alhajri is jointly and severally liable for Masters' damages will not necessarily be decided in the context of Masters' breach of contract claim.  And despite SH Tobacco's contention that "Alhajri has never disputed his status as guarantor to the Lease," P. Br. (ECF No. 34) at 18, SH Tobacco has not given any indication that "Alhajri is willing to stipulate to his full liability under the guaranty for any and all amounts that are owed and may be adjudged to be owed . . . under the Lease without recourse to any defenses."  D. Br. (ECF No. 42) at 35.  Because Alhajri's liability *vel non* appears to present a live controversy that will not necessarily be decided in the context of Masters' breach of contract counterclaim, the court denies the motion for summary judgment with respect to this claim.[13]

## VI

As the court has already explained, *see supra* § III(C), to the extent that SH Tobacco intends to assert an independent claim under § 93.002(g) of the Texas Property Code, the

_____

[13]As a third ground for summary judgment on Masters' declaratory judgment claims, SH Tobcco contends that "Masters has no evidence to support its claim of entitlement to the declarations sought because it cannot prove that SH Tobacco and Alhajri breached the Lease in any way which would allow Masters to exercise the Lease remedies or pursue judgment against Alhajri as the guarantor."  P. Br. (ECF No. 34) at 18.  But the court has concluded above, *see supra* § IV(C), that Masters has created a genuine issue of material fact on the question whether SH Tobacco breached the Lease.  Accordingly, SH Tobacco is not entitled to summary judgment on Masters' declaratory judgment claims on this ground.

court intends to grant summary judgment dismissing that claim *sua sponte*.  Accordingly, SH Tobacco is entitled to reasonable notice and an opportunity to respond.  Within 21 days of the date this memorandum opinion and order is filed, SH Tobacco may file a response brief and evidence appendix addressing why the court should not grant summary judgment on the basis that it has raised *sua sponte*.  After considering this response, the court will either dismiss the claim or invite Masters to file a reply brief.

*   *   *

Accordingly, for the reasons explained, the court grants Masters' motion for summary judgment on SH Tobacco's breach of contract claim; grants SH Tobacco's motion for summary judgment one count of Masters' declaratory judgment counterclaim but otherwise denies the motion for summary judgment filed by SH Tobacco and Alhajri; raises *sua sponte* that, to the extent that SH Tobacco intends to assert an independent claim under Tex. Prop. Code Ann. § 93.002(g), Masters is entitled to summary judgment on that claim; and grants SH Tobacco leave to file an opposition response to granting summary judgment on that claim.

**SO ORDERED**.

April 17, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 23 -